**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| CENTRAL TEXAS HIGHWAY CONSTRUCTORS, LLC, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § § | Civil Action No. 3:24-cv-01591 |
| HUDSON SPECIALTY INSURANCE COMPANY, | § § § | |
| *Defendant*. | § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Central Texas Highway Constructors, LLC ("CTHC") hereby files this Original Complaint against Hudson Specialty Insurance Company ("Hudson") and would respectfully show the Court as follows:

### I.      PARTIES

1.      Plaintiff Central Texas Highway Constructors, LLC is a Texas limited liability company with its principal place of business at 9600 Great Hills Trail, Suite 200E, Austin, Texas 78759.  CTHC's members are (1) ZCC-56, LLC, a Delaware limited liability company, whose sole member, Zachry Construction Corporation, is a Delaware corporation with its principal place of business in Texas; and (2) Ferrovial Agroman 56, LLC, a Texas limited liability company, whose sole member is Ferrovial Agroman Texas, LLC, a Texas limited liability company, whose sole member is Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp., a Delaware corporation with its principal place of business in Texas.

2.      Defendant Hudson Specialty Insurance Company is an insurer doing business in Texas and is a corporation organized and existing under the laws of the State of New York. Hudson maintains its principal place of business in New York.  Hudson can be served through its registered agent for service of process: CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.

## II.      JURISDICTION & VENUE

1.      The foregoing allegations are incorporated herein by reference.

2.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because (1) Defendant is not a citizen of any state of which Plaintiff is also a citizen; and (2) the amount in controversy exceeds $75,000, excluding interest and costs.

3.      Hudson is an insurer doing business in the Northern District of Texas, where Hudson maintains offices and employees and regularly issues policies of insurance to Texas insureds.

4.      Venue is proper in this Court pursuant to (1) 28 U.S.C. § 1391(b)(1) because Hudson resides in and is subject to personal jurisdiction in this district; and (2) 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims recited herein occurred in Dallas, Texas.

## III.      FACTUAL BACKGROUND

5.      The foregoing allegations are incorporated herein by reference.

6.      This is an insurance coverage dispute arising from Hudson's wrongful failure to provide coverage for a judgment obtained by Plaintiff CTHC following an arbitration proceeding against Hudson's insured, ETTL Engineers and Consultants, Inc. ("ETTL").

A.      **The Arbitration & Final Judgment**

7.      In March 2007, SH 130 Concession Company, LLC ("SH 130CC") entered into the SH 130 Segments 5 and 6 Facility Design and Construction Contract (the "D&C Contract") with Zachry Construction Corporation n/k/a Zachry Industrial, Inc. ("ZII") and Ferrovial Agroman US Corp. ("FAUS") to design and build Segments 5 and 6 of State Highway 130 between Lockhart and Seguin, Texas (the "Facility").

8.      CTHC is the single-purpose, joint-venture entity formed by ZII and FAUS to act as the design-build contractor for the Facility in fulfillment of the D&C Contract.

9.      In July 2007, CTHC's predecessor, Ferrovial/Zachry Constructors 56, LLC, entered into an Agreement for Detail Design Services (the "Subcontract") with ETTL to perform certain geotechnical design work for a portion of the Facility. The Subcontract between CTHC and ETTL contained defense and indemnity obligations in favor of CTHC and a binding arbitration provision.

10.     ETTL performed its geotechnical design work between 2007 and early 2009, when construction of the Facility began.

11.     In late 2010 and early 2011, in the midst of a record-breaking drought in central Texas, edge-cracking on newly completed pavement surfaces occurred throughout the Facility. CTHC made a claim under a builder's risk insurance policy issued by Lexington Insurance Company ("Lexington") to obtain coverage for the cost to repair the pavement cracking.

12.     Lexington ultimately denied CTHC's claim on the basis of a "faulty or defective workmanship exclusion" in CTHC's builder's risk policy.

13.     In May 2013, CTHC filed suit against Lexington to recover the costs incurred to repair cracking in the Facility's pavement prior to substantial completion in October 2012.  During

the course of CTHC's litigation against Lexington, CTHC and ETTL cooperated to refute Lexington's coverage defenses.

14.     In July 2014, ETTL provided testimony through its corporate representative, Robert Duke, affirming the reasonableness of ETTL's design work at the Facility.

15.     CTHC and Lexington settled the builder's risk litigation in August 2015.

16.     In March 2016, SH130CC filed for Chapter 11 bankruptcy protection.  After emerging from bankruptcy in mid-2017, SH130CC was no longer owned by affiliates of CTHC, but by its former creditors.

17.     Under new ownership, SH130CC issued various notices and demands to CTHC in 2016 and 2017, alleging defects and damages relating to the Facility's pavement, slopes and bridges occurring after substantial completion in October 2012.

18.     SH130CC's demands culminated in (1) the October 2017 filing of an ICC arbitration; and the (2) March 2018 filing of an adversary proceeding against CTHC, each alleging hundreds of millions of dollars in damages relating to the design and construction of the Facility.

19.     CTHC tendered SH130CC's demands to ETTL under the defense and indemnity provisions of the Subcontract. ETTL refused to defend or indemnify CTHC for the claims brought by SH 130CC.

3.     On August 18, 2018, CTHC filed a request for arbitration against ETTL, among other design subcontractors, in the ICC International Court of Arbitration for defense and indemnity relating to SH 130CC's claims (the "Arbitration").

4.     Over five years after initiating the Arbitration, CTHC obtained a Final Award from the International Court of Arbitration on September 26, 2023, wherein the arbitration panel found that ETTL had a contractual indemnity obligation to CTHC and ordered ETTL to pay CTHC

$12,347,306 for breach of ETTL's duty to indemnify, along with pre-judgment and post-judgment interest (the "Final Award").

20.     ETTL failed and refused to pay the Final Award.

21.     On October 26, 2023, CTHC filed a petition against ETTL in 190th Judicial District Court in Harris County, Texas seeking to confirm the Final Award and obtain a turnover order, and ETTL filed an application to vacate the Final Award.

22.     The court heard arguments of counsel and entered final judgment (the "Judgment") in favor of CTHC on February 2, 2024.

23.     Pre-judgment interest on the Final Award at the rate of 6.25% from September 8, 2021 through the February 2, 2024 date of the Final Judgment totals $1,854,210.16.

24.     Post-judgment interest on the Final Award has accrued at the rate of $2,114.26 per day since February 2, 2024.

**B.     The Hudson Policies**

25.     The foregoing allegations are incorporated herein by reference.

26.     Hudson issued primary Environmental Professional Liability Policy No. ESB 2575 13-14-04 to ETTL for the period from June 30, 2014 to June 30, 2015 (the "Primary Policy").  The Primary Policy's Environmental Professional Liability coverage is subject to a $1 million per-claim limit of liability. By Endorsement No. ESB-COM-1108-285-PL to this coverage part, "CLAIMS EXPENSES [*i.e.*, defense costs] will be paid in addition to, and not serve to reduce the Claim Limit" up to an additional $1 million.

27.     The Primary Policy promises that Hudson will pay "those CLAIM(S) for DAMAGES on behalf of the INSURED [ETTL] … which the INSURED becomes legally obligated to pay to others, but only if (1) such DAMAGES result from a WRONGFUL ACT: (a)

committed by the INSURED in performing or failing to perform PROFESSIONAL SERVICES

… (2) the INSURED committed the WRONGFUL ACT on or after the retroactive date specified

in the Declarations or by endorsement, and prior to the end of the POLICY PERIOD; (3) such

CLAIM is first made against the INSURED during the POLICY PERIOD; (4) such CLAIM is

reported in writing to the Company as soon as practicable during the POLICY PERIOD or by the

end of the applicable Extended Reporting Period; and (5) on or prior to the effective date of the

policy coverage part, no INSURED had knowledge or should have known of any circumstance

which reasonably could be expected to give rise to a CLAIM."

28.     The Primary Policy's Supplementary Payment provisions provides, in relevant part,

that Hudson will "pay with respect to covered CLAIMS, all of the following, as part of and not in

addition to the Claim Limit … [p]re-judgment interest and post judgment interest on the full

amount of any judgment that accrues after entry of the judgment and before the company has paid,

offered to pay or deposited in court the part of the judgment that is covered and within the

applicable Claim Limit.  However, the maximum amount of pre-judgment or post judgment

interest the Company will pay under this policy coverage part will be the portion of pre-judgment

or post judgment interest accrued on DAMAGES covered by this policy coverage part."

29.     The Primary Policy's Supplementary Coverages provide that Hudson will "provide

for the following coverages, as part of and not in addition to the applicable Limit of Liability and

subject to the Deductible, … [c]overage for indemnification of clients – Whenever any written

contract or written job specifications provide that the INSURED shall indemnify the client for, or

hold the client harmless and free from, any DAMAGES or CLAIMS EXPENSES which are due

to the WRONGFUL ACT of the NAMED INSURED, committed on or after the retroactive date,

the Company will pay on behalf of the NAMED INSURED those DAMAGES or CLAIMS

EXPENSES for covered CLAIMS that the NAMED INSURED is legally obligated to pay under such written contract or written job specifications."

30.    Hudson also issued Excess Liability Policy No. ESB 2575-20-14-04 to ETTL for the period from June 30, 2014 to June 30, 2015 (the "Excess Policy") (together with the Primary Policy, the "Policies").  The declarations page of the Excess Policy provides a $4 million per-claim limit. However, Endorsement No. ESB-XS-1108-216b increased the policy limit of the Excess Policy from $4 million to $8 million, effective March 26, 2015.

31.    The Excess Policy follows the form of the Primary Policy and promises that Hudson will "pay on behalf of the Insured those damages covered by the applicable Policy of Underlying Insurance [the Primary Policy] that are in excess of the applicable Limit of Underlying Insurance [$1 million] stated in this policy's Declarations."

**C.    ETTL's & CTHC's Claim Under The Hudson Policies**

32.    On June 1, 2015, ETTL gave a precautionary notice of circumstances/claim under Hudson's Policies.

33.    After receiving subsequent notice from ETTL of CTHC's claims for defense and indemnity from SH130 CC's underlying claims, Hudson has paid for ETTL's defense in the Arbitration under the Primary Policy.

34.    However, in subsequent correspondence and discussions between CTHC, ETTL and Hudson, Hudson has averred that (1) the policy limits applicable to CTHC's Arbitration under the Excess Policy are $4 million, instead of $8 million; and (2) one or more exclusions or other limitations on coverage may apply to limit CTHC's recovery for the Final Judgment.

35.    Contrary to Hudson's assertions, the Primary and Excess Policies provide coverage for the Final Judgment.

36.     In connection with the Arbitration, CTHC has made a Claim for damages that ETTL is legally obligated to pay, as confirmed by the Final Judgment.

37.     The damages claimed in the Arbitration resulted from the WRONGFUL ACTS committed by ETTL in performing or failing to perform PROFESSIONAL SERVICES, including negligent acts, errors and omissions and breaches of the contract relating to the geotechnical designs prepared for the pavement and bridges in Segment 6.2 of the Facility.

38.     The WRONGFUL ACTS committed by ETTL and made the subject of the Arbitration occurred between 2007 and 2009—after the January 1, 1981 retroactive date applicable to the Policies' Environmental Professional Liability coverage and prior to the June 30, 2015 end of the relevant POLICY PERIOD.

39.     CTHC's claims against ETTL were made and/or deemed first made during the applicable POLICY PERIOD of Hudson's Policies.

40.     ETTL reported and provided notice in writing of CTHC's claims in accordance with the terms of the Policies.

41.     Prior to the June 30, 2014 effective date of the Policies, ETTL had no knowledge nor should have known of any circumstance which reasonably could be expected to give rise to a CLAIM.

42.     Without assuming any burden of proof as to any exclusion or limitation on coverage, Hudson has not and cannot show that any exclusion or other limitation on coverage under any Policy avoids coverage for the Final Judgment.

43.     The pre-judgment and post judgment interest that has accrued and will yet accrue on the Final Award and the Final Judgment is payable under the Primary Policy's Supplementary Payment provisions.

44.     The Final Award and Final Judgment represent ETTL's obligation to indemnify its client, CTHC, for purposes of the Primary Policy's Supplementary Coverage.

45.     In refusing and failing to pay the portion of the Final Judgment and accompanying pre-judgment and post-judgment interest within the limits of the Policies, Hudson has caused substantial damages to CTHC.

## IV.     CAUSES OF ACTION

### A.     Breach of Contract

46.     The foregoing allegations are incorporated herein by reference.

47.     Each of the Policies is a valid, enforceable contract.

48.     ETTL is an insured under the Policies.

49.     CTHC is a judgment creditor of ETTL with standing to pursue a direct claim against Hudson under the Policies.

50.     ETTL and/or CTHC have satisfied all conditions under the Policies.

51.     The actual facts and the terms of the Policies unambiguously require Hudson to indemnify CTHC in connection with the Final Judgment.

52.     Alternatively, the terms of the Policies are ambiguous and must be construed in favor of coverage.

53.     Hudson has breached its Policies by failing and refusing to indemnify CTHC for the Final Judgment.

54.     Hudson's breach of its Policies has caused CTHC substantial damages.

### B.     Attorneys' Fees

55.     The foregoing allegations are incorporated herein by reference.

56.    Due to the actions of Hudson, CTHC has been required to retain the services of the law firm of Haynes and Boone, L.L.P. of Dallas, Texas.  CTHC has agreed to pay Haynes and Boone a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to Section 38.001 of the Texas Civil Practices & Remedies Code, CTHC is entitled to an award of its reasonable attorneys' fees against Hudson in an amount to be established at trial.

## V.    JURY DEMAND

57.    CTHC demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VI.    PRAYER

WHEREFORE, CTHC respectfully requests that this Court grant it the following relief:

(1)    Judgment awarding CTHC all damages caused by Hudson's breaches of the Policies;

(2)    Judgment awarding CTHC all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practice & Remedies Code;

(3)    Judgment awarding CTHC pre-judgment and post-judgment interest in the highest amount allowed by law;

(4)    Judgment awarding CTHC all costs of court; and

(5)    Such other and further relief to which CTHC may be justly entitled.

Respectfully submitted,

/s/ *Micah E. Skidmore*
Micah E. Skidmore
State Bar No. 24046856
micah.skidmore@haynesboone.com
Emily Buchanan
State Bar No. 24101568
emily.buchanan@haynesboone.com
HAYNES AND BOONE, L.L.P.
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Telephone:     (214) 651-5000
Telecopier:     (214) 651-5940


ATTORNEYS   FOR   PLAINTIFF   CENTRAL
TEXAS HIGHWAY CONSTRUCTORS, LLC